**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-23374-ALTMAN**

**FERNANDO FANDINO-SENDE, M.D.**,

    *Plaintiff*,

v.

**WALGREEN CO.**, *et al.*

    *Defendants.*

                        /

## ORDER DENYING EXPEDITED MOTION FOR TRO

Our Plaintiff, Dr. Fernando Fandino-Sende, has filed an Expedited Motion for a Temporary Restraining Order ("TRO Motion") [ECF No. 4], asking that we enjoin one of our Defendants, Walgreen Co. ("Walgreens"), "from blocking the filling of Plaintiff's valid prescriptions for controlled substances[.]" TRO Motion at 20. After careful review, we **DENY** the TRO Motion.

### BACKGROUND

Our Plaintiff is a medical doctor who specializes in "pain management at BOF Medical Center, a Florida Licensed pain management clinic." *Id.* at 5. Dr. Fandino-Sende "holds an active and unrestricted DEA license which authorizes him to prescribe controlled substances,," and his "Florida medical license and DEA license for prescribing of controlled substances are both current, unrestricted, and active." *Ibid.* Despite his valid licensure, on March 17, 2026, Dr. Fandino-Sende received a letter from Walgreens notifying him that, "effective May 15, 2026, [Walgreens] will not fill prescriptions for controlled substances issued by him." *Id.* at 3; *see also* March 17, 2026 Letter from Walgreens to Plaintiff ("March 17, 2026 Letter") [ECF No. 4-1] at 11–12. Dr. Fandino-Sende tells us that "[n]o individualized reason was given for Walgreens'[s] decision," and that "[n]either in conversation, nor in written communication, did Walgreens ever question Dr. Fandino-Sende's

medical judgment, notify or inform him of any specific patient prescription being questioned or suspected of not being medically necessary, illegitimate, or otherwise problematic." TRO Motion at 9–10.

On May 13, 2026, Dr. Fandino-Sende filed a three-count Complaint [ECF No. 1] alleging tortious interference with a business relationship against Walgreens (Count I); seeking injunctive relief against Walgreens (Count II); and asserting a due-process claim against Walgreens and James Uthmeier in his official capacity as Attorney General of the State of Florida (Count III). *See* Complaint ¶¶ 106–64. That same day, Dr. Fandino-Sende filed the TRO Motion, arguing that temporary injunctive relief is necessary because "his next patient panel [ ] is on May 20, 2026," and that a failure to enjoin Walgreens before that date "will result in irreparable economic and reputational harm to Dr. Fandino-Sende and his ability to practice medicine." TRO Motion at 1–2. Dr. Fandino-Sende also argues that his patients "will likely be harmed and experience uncontrollable pain, withdrawal symptoms, and or psychological issues due to abrupt discontinuation of their needed medical treatment." *Ibid.*

## THE LAW

The four factors we consider when determining whether to grant a temporary restraining order are identical to the four factors we evaluate when deciding whether to grant a preliminary injunction. *See Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001) (applying the four-factor test to both temporary restraining orders and preliminary injunctions). The difference between the two forms of injunctive relief is that a temporary restraining order "may be issued 'without written or oral notice to the adverse party or its attorney[.]'" *Finkelstein v. Mt. Sinai Med. Ctr. of Fla.*, 2023 WL 6118179, at *2 n.1 (S.D. Fla. Sept. 19, 2023) (Altman, J.) (quoting FED. R. CIV. P. 65(b)(1)). "A district court may grant a preliminary injunction only if the moving party establishes that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the

opposing party; and (4) the injunction would not be adverse to the public interest." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270–71 (11th Cir. 2020) (footnote omitted). A showing of irreparable injury is "the sine qua non of injunctive relief" and the most important of the four factors. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (quoting N*e. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). To satisfy this standard, the party "seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Still, a district court cannot grant a preliminary injunction unless the moving party satisfies *all four* of the requirements. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("Because Wreal must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms [his request]."). The Plaintiff bears the burden of establishing their need for a preliminary injunction. *See ibid.* ("Because a preliminary injunction is an extraordinary and drastic remedy, its grant is the exception rather than the rule, and [the] plaintiff must clearly carry the burden of persuasion." (cleaned up)).

## ANALYSIS

For two reasons, we're denying Dr. Fandino-Sende's request for a temporary restraining order. *First*, he hasn't demonstrated that he's likely to succeed on the merits of his tortious-interference claim—which is the basis for his requested injunctive relief. *See* TRO Motion at 13 ("Substantial Likelihood that Plaintiff will Succeed on the Merits of the Claim for Tortious Interference with a Business Relationship."). *Second*, he hasn't shown that he's likely to suffer irreparable harm in the absence of injunctive relief. We'll address each deficiency in turn.[1]

### I.     Success on the Merits

---

[1] Because Dr. Fandino-Sende hasn't satisfied the first two factors for injunctive relief, we needn't (and shouldn't) opine on whether he's satisfied the third (balancing of harms) or fourth (public interest) elements.

"Under Florida law, '[t]he elements of tortious interference with a business relationship are (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). With respect to the third element, "[f]or the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship. *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. Dist. Ct. App. 1999) (cleaned up). "A defendant is not a stranger to a business or contractual relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Nimbus Techs., Inc. v. SunnData Prods., Inc.*, 484 F.3d 1305, 1309 (11th Cir. 2007).[2]

Here, Dr. Fandino-Sende can't satisfy the third element of a tortious-interference claim because Walgreens isn't a stranger to the business relationships between Dr. Fandino-Sende and his patients who fill their prescriptions at Walgreens. By his own concession, "[o]ver 175 of Dr. Fandino-Sende's patients use Walgreens to fill their medications." TRO Motion at 3. So, far from being a stranger to the relevant business relationships, Walgreens is a critical intermediary and has both an economic interest in, and a degree of control over, these relationships (as evidenced by its ability to refuse prescriptions from certain doctors). *See Nimbus*, 484 F.3d at 1309 ("A defendant is not a stranger to a business or contractual relationship if the defendant has any beneficial or economic interest in, or control over, that relationship."); *see also Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. Dist. Ct. App. 2009) ("Under Florida law, a defendant is not a stranger to a business

---

[2] Although *Nimbus* involved the application of Alabama law, courts routinely rely on it in cases applying Florida law. *See, e.g.*, *Marino v. Phaidon Int'l, Inc.*, 2024 WL 147849, at *6 (S.D. Fla. Jan. 8, 2024) (Cannon, J.), *aff'd*, 2024 WL 4298164 (11th Cir. Sept. 26, 2024); *Temurian v. Piccolo*, 2019 WL 1763022, at *8 (S.D. Fla. Apr. 22, 2019) (Bloom, J.).

relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed.").

Moreover, the "intentional and unjustified inquiry is fact-intensive and requires an examination of the defendant's conduct, its motive, and the interests it sought to advance." *Temurian*, 2019 WL 1763022, at *8. (cleaned up). By pursuing a temporary restraining order, Dr. Fandino-Sende has deprived Walgreens of the ability to explain its motive for blocking Dr. Fandino-Sende's prescriptions. We accordingly have very limited information with which to determine whether Walgreens's conduct is truly unjustified. What we do know is that Walgreens's decision was based "on the response received" from Dr. Fandino-Sende to Walgreens's prescriber-evaluation audit. *See* March 17, 2026 Letter. While this isn't a particularly informative explanation of Walgreens's rationale, it provides us with reason to believe that Walgreens's decision may not be completely "unjustified."

## II.     Irreparable Injury

To satisfy the second element of the temporary-restraining-order test, the party seeking the temporary restraining order must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. And the threatened irreparable injury "must be neither remote nor speculative, but actual and imminent." *City of Jacksonville*, 896 F.2d at 1285; *see also Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable.").

Dr. Fandino-Sende argues that Walgreens's "blanket prohibition on filling valid prescriptions for any controlled substances for over one full year will cause Dr. Fandino-Sende to suffer irreparable injury to his reputation, business, and professional employment status . . . [the] Defendant's action would essentially remove Plaintiff from the practice of medicine, as his medical practice and reputation will be irreparably damaged, and he will be rendered unemployable." TRO Motion at 16. Two problems with this.

*First*, Dr. Fandino-Sende hasn't explained why he can't direct his patients to another pharmacy. *See e.g.*, *id.* at 3 ("Walgreens'[s] unilateral prohibition creates tremendous problems for these patients who will be forced to try to find another physician or another pharmacy."); *id.* at 11 ("Dr. Fandino-Sende's patients who are treated with non-opioid controlled substances for other chronic medical issues such as congestive heart failure (CHF), COPD, and other illnesses, are faced with the same dilemma of either finding another provider to manage their care or finding another pharmacy to fill their prescriptions for non-opioid controlled substances."). He merely alleges—in the most conclusory way—that "[m]edical facilities will not accommodate the logistics necessary to redirect patients to another provider or another pharmacy." *Id.* at 17. This claim, however, isn't supported by any evidence and lacks meaningful explanation. On the other hand, Walgreens provided Dr. Fandino-Sende with nearly two-months' notice of its decision to discontinue filling his prescriptions and specifically requested that he "ensure [his] patients are aware that Walgreens will no longer fill controlled substance prescriptions prescribed by [him]" "[s]o as not to impact patient care[.]" March 17, 2026 Letter. Put another way, Dr. Fandino-Sende could've started sending his patients to other pharmacies as early as two months ago. And he doesn't explain why he didn't—or can't—use other pharmacies.

*Second*, Dr. Fandino-Sende's hypothetical second-order effects—that he'll be "remove[d]" from the practice of medicine and "rendered unemployable" are too speculative to support his request for a temporary restraining order. Walgreens has apparently already informed "all of Dr. Fandino-Sende's patients [that] [b]ased on an internal review Walgreens has decided to no longer dispense controlled substance prescriptions from" him. TRO Motion at 10–11. And, as far as we can tell, he's still employed and practicing medicine.

\*   \*   \*

In sum, Dr. Fandino-Sende hasn't shown *either* that he's likely to succeed on the merits of his tortious-interference claim *or* that he's likely to suffer irreparable injury in the absence of injunctive relief, so his TRO Motion is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on May 19, 2026.

                                            _____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record